IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00548-WDM

BRUCE R. GRIFFITH,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Miller, J.

Claimant Bruce Griffith (Griffith) appeals a final administrative decision by defendant Michael J. Astrue[1] (the Commissioner) finding that he is not disabled within the meaning of the Social Security Act.

### Background

Griffith was born in 1952 and has a high school education. His past relevant work has all been in the construction business. Of particular note, he has worked in the past as an assistant construction superintendent, a job that the Social Security Administration classifies as light work.

1. <u>Medical History</u>

---

[1] This case was originally brought against JoAnne B. Barnhart in her official capacity as Commissioner of Social Security, but on February 12, 2007, Michael J. Astrue became the new Commissioner. Therefore, pursuant to Fed. R. Civ. P. 12(d)(1), he is automatically substituted as a party and this case will proceed in his name.

PDF Final

Griffith's claim of disability relies almost completely[2] upon his complaints of back pain. In 1998, he injured his back in a motorcycle accident, which led to back surgery in 1999.[3] Thereafter, his medical records do not indicate any complaints about back pain until March 27, 2003, at which time he complained of increasing back pain when he performed hard labor at his construction job. Indeed, in April 2002, Dr. Cranor, his treating physician, noted that Griffith reported that he was "getting healthier and healthier," had "no musculoskeletal complaints except that it hurt[] him to lie down on a flat surface," and had "no axial spine tenderness." (Admin. R. at 145-46.) However, on March 27, 2003, Dr. Cranor saw Griffith in relation to increasing back pain and shoulder pain. Dr. Cranor gave Griffith an injection in his shoulder, prescribed physical therapy for his shoulder, and prescribed Vicodin for his general discomfort (Admin. R. at 143).

On August 25, 2003, Dr. Cranor again saw Griffith in relation to his back pain.[4] Griffith complained that because of his back pain, he could not do "physical labor for which he is trained" and could not sit, lift, or stand without "incapacitating pain." (Admin. R. at 172.) After his examination, Dr. Cranor noted that Griffith's musculature

---

[2] Griffith's medical records also indicate that he has sought medical treatment for gout, snoring, and a painful lump on his foot. However, Griffith does not even mention these ailments in his briefs.

[3] Specifically, Griffith describes his back surgery as a "decompressive laminectomy at LS-S1 and bilateral PILF (posterior lumbar interbody fusion) at LF-5 with plating and autograft from the right posterior iliac crest." (Pl.'s Opening Br., Docket No. 11, at 4.)

[4] It is this report by Dr. Cranor that was not available when the ALJ made his determination that Griffith is not disabled within the meaning of the Social Security Act and which forms the basis for this appeal.

was symmetric, his joints had "decent and functional range of motion," his axial spine was straight, and that he had a good range of motion but he could not "stand up without exaggeratedly extending his back with a lot of pain." *Id.* at 172-73. Griffith did not see Dr. Cranor again regarding his back pain although he did see him twice about a lacerated thumb.

A consultative examination was performed by Dr. Denzel on August 19, 2003. Dr. Denzel noted that Griffith had a positive Minor's sign,[5] and was in obvious discomfort when transferring or ambulating. (Admin. R. at 140.) Dr. Denzel also noted that Griffith had "at least moderate discomfort" when bending, squatting, and rising from a squat, and that Griffith used the assistance of the exam table when performing these motions. *Id.* The examination also revealed "significant and consistent range of motion abnormality" in Griffith's lumbar range of motion but normal range of motion for all other joints. *Id.* at 140-41. Finally, Dr. Denzel noted that the Griffith's back pain restricted his daily life activities and recommended that Griffith should:

> be restricted from bending, stooping, squatting, climbing, and crawling. He should also be restricted to lifting zero pounds from floor to waist, 5 pounds from waist to shoulders, zero pounds above shoulders. He should also be restricted from pushing and pulling more than 10 pounds or doing any type of prolonged sitting, standing and walking for more than 30 minutes at a time without frequent change in position.

*Id.* at 141.

Griffith testified that he drives, cooks outdoors on a grill, does laundry, and

---

[5] According to Griffith, a Minor's sign is when a patient needs to support his low back in order to rise from a seated position. (Pl.'s Opening Br., Docket No. 11, at 5 n.1.)

mows the yard albeit on a riding mower. (Admin. R. at 188-89). In addition, Griffith testified that he could vacuum and dust although he currently does not do those chores. *Id.* at 188. He also testified that he continues to ride his motorcycle on nice days (although the distance or time involved was not specified) and that he occasionally goes hunting but limits the his hunting range to nearby his truck. *Id.* at 189. Griffith characterized his pain as a continuous dull pain "just above the belt line," but testified that the pain converted to a sharp pain if he moved the wrong way. *Id.* Finally, Griffith testified that he can walk, stand, or sit for short amounts of time (approximately 10-15 minutes) comfortably and that he could probably lift 10-15 pounds without trouble. *Id.* at 191-92.

2.  Procedural History

On April 22, 2003, Griffith submitted an application to the Social Security Administration for disability insurance benefits claiming he became disabled as of January 1, 2002. After this application was denied on initial review, he requested and received a hearing before an Administrative Law Judge (ALJ). Following this hearing held March 16, 2005, the ALJ issued a decision finding that Griffith is not disabled because he is able to perform his past relevant work as a assistant construction superintendent. In his appeal to the Social Security Appeals Council, Griffith submitted additional evidence consisting of a letter from his attorney and medical records dated August 25, 2003 from his treating physician, J. David Cranor. (Admin. R. at 168-173.) The Appeals Council considered the new evidence, but nonetheless declined review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner

for review in this court.

## Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards. *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

## Discussion

The Secretary has established a five-step evaluation process to determine whether a claimant is disabled for purposes of the Social Security Act. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [her] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

Following this process, the ALJ determined at step four that Griffith retained the residual functional capacity (RFC) to perform light work, which "involve[s] lifting and carrying 10 pounds frequently and 20 pounds occasionally, sitting for up to two hours total in an eight hour work day, and standing and walking for up to six hours." (Admin.

R. at 48-49, ¶ 6.) Based upon this RFC, the ALJ concluded that Griffith is not disabled because his impairments do not prevent him from doing his past work as an assistant construction superintendent.

Griffith's only argument on appeal is that the ALJ's RFC, and thus his ultimate finding of no disability, is not supported by substantial evidence.[6] Specifically, he argues that the ALJ's RFC determination is erroneous for three reasons: (1) he made his decision without the benefit of key medical evidence; (2) he rejected on the opinion of Dr. Gregory Denzel, a consultative physician who opined that Griffith had significantly restrictive functional capabilities; and (3) he concluded that several pieces of evidence weighed against Griffith's claims of disability. Griffith argues that when all of these errors are considered in combination, it is clear that the ALJ's findings are not supported by substantial evidence.

Griffith's first argues that the ALJ made his determination without knowledge of notes prepared by his treating physician, Dr. Cranor, after an August 25, 2003 examination. These notes were not presented to the ALJ, but were reviewed by the Appeals Council. In such a situation, the new evidence becomes part of the whole record for review, and this court is to determine whether the ALJ's determination remains supported by substantial evidence when the record includes the new evidence. *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

---

[6] Notably, while Griffith's arguments naturally center around physician's opinions, he is not arguing that the ALJ failed to consider all of the proper factors when evaluating their opinions. Indeed, it would be difficult to do so in this case, because the ALJ states that he "has considered the reports of . . . treating, examining, and non-examining medical sources in accordance with 20 C.F.R. 404.1527." (Admin. R. at 45.)

Dr. Cranor's August 2003 notes generally describe Griffith's overall medical status (Admin. R. at 172-73.), but two of Dr. Cranor's comments are particularly noteworthy. First, after noting that Griffith's back pain is worse after working on his house, Dr. Cranor states that Griffith "has evidently achieved full disability because of his back injuries as he really cannot do any physical labor for which he is trained anymore." *Id.* at 172. Second, Dr. Cranor also comments that "[m]uskoskelatal complaints are dominated by [Griffith's] back pain, which incapacitates him." *Id.* These comments contradict some of the reasons the ALJ gave supporting his RFC finding. For example, the ALJ emphasized that Dr. Cranor "has not concluded that he is disabled from working or recommended any work or activity restrictions." (Admin. R. at 45.) However, under *O'Dell* this is not dispositive; the key question is merely whether there remains substantial evidence to support the ALJ's determination. 44 F.3d at 859.

Although the comments made by Dr. Cranor may cause a reasonable decision maker to come to a different conclusion under *de novo* review, it does not alter the record as a whole to such an extent as to render the ALJ's decision not supported by substantial evidence. A reasonable decision maker could give Dr. Cranor's first comment significantly less than controlling weight because it appears to be based upon a different definition of disability than that which the ALJ was required to apply. Dr. Cranor appears to say that *because* Griffith cannot do the hard labor required for construction work, he is disabled. This, of course, is not the standard for federal disability benefits; rather, the standard is whether Griffith can perform any of his past

relevant work in light of his RFC. 20 C.F.R. § 404.1520(f).

Additionally, a reasonable decision maker could also give Dr. Cranor's second comment similarly light weight. It is not clear what Dr. Cranor meant by "incapacitates," and taking this comment to mean that Griffith's back pain is *totally* incapacitating would be inconsistent with other evidence in the record cited by the ALJ.[7] For example, the ALJ correctly noted that Griffith did not seek regular treatment for his back or complain of significant ongoing pain. (Admin. R. at 45.) Indeed, Griffith admits that his records reflect no complaints about back pain until March 27, 2003. Moreover, the ALJ also noted that Griffith testified that he could lift and carry about 10 to 15 pounds. (Admin. R. at 46, 192.)

Furthermore, a physician's opinion regarding total disability is not dispositive of the issue of disability; rather, that determination is reserved for the Commissioner. *Castellano*, 26 F.3d 1027, 1029 (10th Cir. 1994); *see also* 20 C.F.R. § 404.1527(e)(2). Therefore, although Dr. Cranor's opinions regarding Griffith's "full disability" and "incapacitation" may be considered when determining disability, the presence of such an opinion by a physician, even a treating physician, is not sufficient to render an opinion by an ALJ not supported by substantial evidence. In this case, the ALJ noted several factors when making his determination that Griffith was capable of performing

---

[7] Arguably, if this comment were interpreted as a treating physician's opinion, as contemplated by 20 C.F.R. § 1527 (regarding evaluation of opinion evidence), the Appeals Council would be required to demonstrate consideration of all of the factors listed therein, since the ALJ could not consider an opinion he did not have before him. Importantly, however, Griffith's briefs do not present this argument, or anything that could be fairly construed to be such an argument.

light work. For example, the ALJ considered recent imaging studies of Griffith's spine, Griffith's previous medical complaints about his back, Griffith's ability to perform many activities of daily living, and Griffith's normal functioning in terms of strength, sensation, and reflexes. (Admin. R. at 45–46). The fact that Dr. Cranor made additional comments about Griffith's back pain in August 2003 does not substantially affect these other factors. Therefore, the ALJ's decision remains supported by substantial evidence even in light of the additional medical notes made by Dr. Cranor.

In his second argument, Griffith takes issue with the ALJ's rejection of the opinions of a consultative physician, Dr. Denzel. Dr. Denzel opined that Griffith should:

> be restricted from bending, stooping, squatting, climbing, and crawling. He should also be restricted to lifting zero pounds from floor to waist, 5 pounds from waist to shoulders, zero pounds above shoulders. He should also be restricted from pushing and pulling more than 10 pounds or doing any type of prolonged sitting, standing and walking for more than 30 minutes at a time without frequent change in position.

*Id.* at 141. Griffith first notes that the ALJ rejected this opinion without the benefit of the evidence discussed above. This is a valid point to some degree, but as discussed, the newly presented evidence could reasonably be discounted, and Griffith does not explain how it would have affected the ALJ's evaluation of Dr. Denzel's opinion. Griffith also claims that the ALJ was simply incorrect when he commented that "[t]he only positive examination findings were outward signs of discomfort, and limited forward flexion of the lumbar spine." *Id.* at 45. On the contrary, Griffith argues, Dr. Denzel found that his spine was diffusely tender and that he gave a positive Minor's

sign. I disagree. Both of these findings would fall under the "outward signs of discomfort" noted by the ALJ.

Griffith's third argument is a little unclear, but it appears that he is arguing that the ALJ placed too much weight on evidence that appears to detract from his claim of disability. Specifically, Griffith takes issue with the ALJ's discussion of Dr. Cranor's notes from an April 2002 examination, and the evidence of his daily activities.

As to the April 2002 examination notes, the ALJ stated:

> He reported taking a long motorcycle ride the day before the examination, and he did not report any back problems due to the motorcycle riding. He denied ongoing musculoskeletal complaints except that he experienced pain when lying down on a flat, hard surface.

*Id.* at 44. Griffith does not dispute the accuracy of these comments, but he argues that Dr. Cranor's notes were merely indicative of how he felt at that time. While Griffith may be correct, the fact that he was doing well in April of 2002 is some evidence of the credibility of his later complaints of pain beginning in March 2003, and there is nothing wrong with the ALJ citing this evidence in support of his determinations.

Similarly, as to his daily activities, Griffith does not claim that the ALJ was incorrect when he noted that he drives, does laundry, mows the lawn, cooks on the grill, generally cares for his personal needs, and occasionally rides his motorcycle and goes hunting. *Id.* at 46. Griffith argues, however, that his daily activities do not necessarily contradict his disability claims. Again he is correct as far as his argument goes — these activities are not *necessarily* inconsistent with a finding of disability. They are, however, clearly indicative that Griffith's claims of total disability may be exaggerated. Therefore, it was completely appropriate for the ALJ to cite this

evidence in support of his determinations.

I note that Griffith argues that his three arguments, when considered in combination, render the ALJ's opinion not supported by substantial evidence. I, however, disagree. As discussed above, I find that individually none of the three arguments affects the weight of evidence because the additional evidence may be discounted or does not affect the evidence relied upon by the ALJ. Therefore, I also conclude that, in combination, the arguments do not affect the weight of evidence.

## Conclusion

After considering all of Griffith's arguments, and the evidence in this case as a whole, I conclude that a reasonable decision maker could rationally conclude that Griffith retained the RFC to "lift[] and carry[] 10 pounds frequently and 20 pounds occasionally, sit[] for up to two hours total in an eight hour work day, and stand[] and walking for up to six hours." Under the standards described above, this is sufficient, and the ALJ's determinations are therefore affirmed as supported by substantial evidence and not contrary to law.

DATED at Denver, Colorado, on September 19, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge